

**ORDERED in the Southern District of Florida on February 7, 2020.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| In re<br><br>ARISTA IMAGING OF N. MIAMI, LLC,<br><br>        Debtor. | Case No. 19-26519-AJC<br>Chapter 11<br>Jointly Administered |
| In re<br><br>PRESGAR IMAGING OF CMI NORTH, L.C.,<br><br>        Debtor. | Case No. 19-26520-AJC<br>Chapter 11 |

**MEMORANDUM ORDER GRANTING JOINT MOTION
TO DISMISS CHAPTER 11 CASE**

THIS MATTER came before the Court for hearing on January 9, 2020 upon the _Joint Motion of NSR Imaging LLC and Daniele Mugnai to Dismiss Chapter 11 Case for Lack of Authority to File and for Bad Faith Pursuant to 11 U.S.C. § 1112(b)_ [ECF No. 17] ("Motion to Dismiss") filed by NSR Imaging, LLC ("NSR) and Danielle Mugnai ("Mugnai" and collectively

with NSR, the "Movants"), The Court having considered the Motion to Dismiss, *Debtors'*
*Response In Opposition to Motion To Dismiss* [ECF No. 71] filed by Arista Imaging of North
Miami, LLC ("Arista Imaging") and Presgar Imaging of CMI North, LLC ("Presgar", and
collectively with Arista Imaging, the "Debtors"), the Parties' declarations, documentary evidence
and supplemental submissions, and having conducted a hearing at which extensive argument was
presented, the Court grants the Motion to Dismiss.

The Court provided Debtor's counsel the opportunity, post-hearing, to submit additional
authority that might persuade this Court that the filing of the petitions was authorized. The Court
was unpersuaded by the Debtors' post-hearing filings. The following are the Court's findings of
fact and conclusions of law in conformity with Rule 52(a)(1) of the Federal Rules of Civil
Procedure, made applicable to this contested matter pursuant to Rules 7052 and 9014 of the Federal
Rules of Bankruptcy Procedure.

## I.     BACKGROUND

### A.     The Commencement of the Chapter 11 Cases

1.     The Debtors commenced these chapter 11 cases by the filing of voluntary petitions
on December 10, 2019.

2.     Those petitions were signed by Martin Farrell ("Farrell" or "Mr. Farrell") in the
stated capacity of "Managing Member" of Arista Imaging and filed by the Debtors four days after
entry of an order by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade
County, Florida (the "State Court") in Civil Action Case No. 2019-007383-CA-01 (the
"Litigation"). That order appointed a neutral receiver with full control over all assets and
operations of both Arista Imaging and Presgar and expressly ordered that, "[e]ffective immediately
Farrell will cease to have any involvement in, or control over, any matter relating to Presgar or
Arista Imaging during the pendency of this litigation while this Order is in place." *Order Granting*

*Temporary Injunction To Prevent Farrell From Managing Arista Imaging and Presgar And For Appointment of a Receiver*, ECF No. 17-3 (the "Injunction Order") at 13.

**B.    The Debtors' Corporate Structure and Business**

3.      Arista Imaging was formed as a Texas limited liability company in 2009 with a principal place of business in Miami, Florida. *Declaration of Daniele Mugnai* (the "Mugnai Declaration"), at Exhibit A, Operating Agreement of Arista Imaging of N. Miami, LLC dated as of March 27, 2009 (the "Operating Agreement"), ECF No. 17-2.

4.      Presgar is a Florida limited liability company, formed in or around 1999, with its principal place of business in Miami, Florida, and is a wholly-owned subsidiary of Arista Imaging. *Debtors' Response in Opposition to Motion to Dismiss* (the "Opposition"), ECF No. 71, at ¶ 1. Presgar's business is a local MRI imaging center in North Miami, Florida located at 1860 NE Miami Gardens Drive, Miami, Florida. *Motion to Dismiss*, ECF No. 17, at ¶ 2. Despite the center's small size, Presgar has one of the highest scan volumes in the South Florida area. *See Declaration of Martin J. Farrell in Support of First-Day Motions* (the "Farrell Declaration"), ECF No. 18, at ¶ 29.

5.      In 2009, Daniele Mugnai and his business partner Manuel Vadillo, and Mr. Farrell and his business partner Eric Stetenfeld (collectively, the "Original Investors") agreed to purchase the imaging center currently owned by Presgar. *Farrell Declaration*, ECF No. 18, at ¶ 19. They decided to use Arista Imaging as the entity that would purchase Presgar from its original owner and operate the imaging center. *Id.*

6.      Each of the four Original Investors and certain other later investors owned or controlled their interests in Arista Imaging through ownership vehicles. As of January 1, 2011, the ownership interests in Arista Imaging were held as follows:

- *Oidhreacht Investments* ("Oidhreacht") held Mr. Farrell's 27.5% membership

interest;

- *Wolfgang Investments* held Mr. Stetenfeld's 19.2 % ownership interest;[1]

- *Sweetpea Ventures* held a separate 5.3% interest for Elizabeth Stetenfeld;

- *Arista Management, LLC* ("Arista Management") held an additional 4.0% for Mr. Farrell and Mr. Stetenfeld;

- *NSR* held a 42% membership interest for Mr. Mugnai and Mr. Vadillo;[2]

- *JPT Investments* held a 1% ownership interest; and

- *Carl Baggett* held a 1% ownership interest.

*Operating Agreement*, ECF No. 17-2, at Exhibit A.

7.      From its formation, Arista Imaging's governance was dictated by the Operating Agreement.  The management of the business and affairs of Arista Imaging (and of its only asset, Presgar) was delegated to Mr. Farrell and Mr. Stetenfeld as the members of the Board of Directors. *Operating Agreement*, ECF No. 17-2, at § 3.1. Although Mr. Stetenfeld was also originally appointed manager of Arista Imaging, Mr. Farrell began to exclusively manage Arista Imaging and Presgar as of 2012. *Farrell Declaration*, ECF No. 18, at ¶ 26.

8.      The Operating Agreement identifies several levels of consent necessary for Arista Imaging to act.  Control not otherwise allocated in the Operating Agreement is delegated, in the first instance, to the Board of Directors, which decides based on the majority vote of the then-present quorum.  *Operating Agreement*, ECF No. 17-2, at § 3.1.  The Operating Agreement, however, expressly identifies certain actions delegated to the exclusive authority of the members

---

[1] In 2012, as part of divorce proceedings between Eric and Elizabeth Stetenfeld, a Texas court ordered Mr. Stetenfeld to turnover his membership units in Arista Imaging for levy to Mrs. Stetenfeld's counsel.  Thus, as a result of the Stetenfelds' divorce, Wolfgang Investment's entire 19.20% ownership interest in Arista Imaging was to be transferred to Elizabeth Stetenfeld or her entity, Sweetpea Ventures. *Farrell Declaration*, ECF No. 18, at ¶ 26.

[2] Although the record owners of NSR Imaging are Mr. Mugnai's mother (Maristella Nanni) and Mr. Vadillo's wife (Josie Vadillo), Mr. Mugnai and Mr. Vadillo assert they are the beneficial owners. *See Mugnai Declaration*, ECF No.17-2, at p. 1 n.1.

and further identifies the requisite vote of those members required to authorize the action. *See Operating Agreement*, ECF No. 17-2, at § 3.8.

9.      Under section 3.8 of the Operating Agreement both the Board of Directors and the manager are prohibited, "[n]otwithstanding any provision [of the Operating Agreement] to the contrary," from taking certain actions without the prior approval of a "Super-Majority-In-Interest," defined in the Operating Agreement as "Members owning at least seventy five percent (75%) of the Outstanding Units of the Company." *Id.* at § 3.8.

10.     The actions that require the "prior approval" of a "Super-Majority-in-Interest" include: (a) "[d]o[ing] any act that is unrelated to the purpose of the Company or that otherwise contravenes any provision of this Agreement;" (b) [m]ak[ing] an assignment for the benefit of creditors of the Company *or [f]iling a voluntary petition in bankruptcy or appoint[ing] a receiver for the Company*; … (e)… enter[ing] into any contract or agreement that [] creates a monetary obligation on the part of the Company greater than . . . $150,000; or (f) [e]xpel[ling] a Member . . . ." *Id.* (emphasis added).

11.     Section 12.9 of the Operating Agreement further provides that any amendment to the Operating Agreement requires the "unanimous written agreement of all Members." *Id.* at § 12.9.

## C.     The Member Controversy and Litigation

12.     During early 2018, controversy regarding the management and operations of Arista Imaging and Presgar arose between a subset of the Arista Imaging members. *Farrell Declaration*, ECF No. 18, at ¶ 22.  NSR expressed concern to Mr. Farrell in his then-capacity as managing member regarding a perceived lack of access to meaningful financial information regarding Presgar's business activities.  *Id.*  Through outside counsel, NSR demanded from Mr. Farrell that he provide certain financial information, including Presgar's profit and loss statements from 2014-

2017, pursuant to Sections 3.4 and 4.2 of the Operating Agreement. *Id.* at ¶ 48. Mr. Farrell did not

provide the requested information. *See Injunction Order*, ECF No. 17-3, at p. 10.

13.     On October 26, 2018, NSR again requested this (and other) financial information

and explained that it appeared that Mr. Farrell was breaching his duties and obligations to Presgar,

Arista Imaging, and the members of Arista Imaging. *Farrell Declaration*, ECF No. 18, at ¶ 48.

NSR also asserted that it had become aware of various unauthorized expenses that Mr. Farrell had

caused Presgar to incur to benefit Mr. Farrell and companies he alone owns. *Motion to Dismiss*,

ECF No. 17, at ¶ 13.

14.     Rather than produce the financial information requested, Mr. Farrell and Epic

Management LLC ("Epic"), one of the entities wholly owned by Mr. Farrell, engaged the law firm

of Greenberg Traurig, LLP ("Greenberg Traurig") and filed a lawsuit on November 1, 2018 against

Mr. Mugnai personally. *Farrell Declaration*, ECF No. 18, at ¶ 55. In the lawsuit, Mr. Farrell

alleged that Mr. Mugnai "tortiously interfered" with Epic's alleged agreement and/or business

relationship with Presgar by "demand[ing] records" of Presgar, Epic, Farrell, and Farrell's other

companies. *Id.* at ¶ 57. That action remains pending.

15.     Then, on January 19, 2019, Mr. Farrell sent NSR a letter claiming that NSR "was

expelled as a member of Arista." *See generally id.* at ¶¶ 59-61, 64; *Opposition*, at ¶ 13. According

to the letter, Oidhreacht Investments (owned and controlled by Farrell) and Sweetpea Ventures

"approved the expulsion," without the vote of a Super-Majority-In-Interest of Members and

without solicitation of NSR's vote. *See Farrell Declaration*, ECF No. 18 at ¶ 61; *Injunction Order*,

ECF No. 17-3, at p. 11-12.

16.     Mr. Farrell's position, championed by the Debtors in these chapter 11 cases, is that

Arista Imaging was converted from a Texas limited liability company to a Delaware limited

6

liability company in December 2018 based on the vote of what he admits is a mere majority of the Arista Imaging membership. *Farrell Declaration*, ECF No. 18, at ¶ 59; *Opposition*, ECF No. 71, at ¶ 9. Mr. Farrell further asserts and Debtors further adopt the position that, post-conversion, the requisite membership interest holders of Arista Imaging voted to both amend the Operating Agreement—an action that Section 12.9 of the Operating Agreement conditions on unanimous acceptance of the membership—and expel NSR as a member—an action that the Operating Agreement conditions on acceptance by 75% of the membership—without solicitation of NSR's 42% vote. *See Opposition*, ECF No. 71, at ¶¶ 9-10.

17.    Mr. Farrell asserts that Arista Imaging's "change in jurisdiction and amendments to the operating agreement were made in accordance with the provisions of the original 2009 Arista Miami operating Agreement," *Farrell Declaration*, ECF No. 18, at ¶ 59. He states that both the conversion and the amendment could be affected by the vote of a "Majority-in-Interest" defined in the Operating Agreement as "Members owning a simple majority of the Outstanding Units of the Company." *Id.* at ¶ 60. Mr. Farrell further asserts that he, acting through Oidhreacht Investments and Sweetpea Ventures, held aggregate interests of 56%, and voted "in accordance with the December 2018 operating agreement . . . to expel NSR." *Id.* at ¶ 61.

18.    Under Section 12.9 of the original Operating Agreement as executed in 2009, the amendments to the Operating Agreement to expel NSR from Arista Imaging required unanimous approval by the members. *See Operating Agreement*, ECF No. 17-2, at § 12.9. Mr. Farrell does not assert, and it is undisputed, that NSR's consent to amend the Operating Agreement was not sought and was not given. Mr. Farrell also does not assert, and it is undisputed, that the consent of two additional Arista Imaging members, JPT Investments and Carl Baggett, was neither sought nor received. *Opposition*, ECF No. 71, at ¶¶ 9-10.

19.     After the alleged ouster of NSR, on March 14, 2019, NSR filed a derivative lawsuit on behalf of both Presgar and Arista Imaging against Farrell, Oidhreacht Investments, and Sweetpea Ventures (the "Defendants") with the State Court commencing the Litigation. *Opposition*, ECF No. 71, at ¶ 18.  Through the Litigation, NSR asserted on behalf of Arista Imaging and Presgar the following causes of action against Farrell: accounting under Fla. Stat. § 605.0411 (Count 1); breach of Farrell's fiduciary duties as an officer of Presgar and as manager and director of Arista Imaging (Counts 2-4); breach of the Operating Agreement (Count 5); and conversion and/or civil theft of Presgar's and Arista Imaging's assets (Counts 6 and 7).  *Injunction Order*, ECF No. 17-3, at p. 2; *Motion to Dismiss*, ECF No. 17, at ¶ 16.

20.     In addition to seeking damages, NSR, for and on behalf of Presgar and Arista Imaging, sought injunctive relief prohibiting Farrell from continuing to manage Presgar and Arista Imaging and also sought the appointment of a receiver during the pendency of the case.  *Injunction Order*, ECF No. 17-3, at p. 2. The TRO Motion was contested by Mr. Farrell and his wholly owned entities through Mr. Farrell's counsel, Greenberg Traurig.  *See id.* at p. 1-2.

**D.     The State Court Decision**

21.     On September 18, 2019, the State Court held an evidentiary hearing regarding the injunctive relief and receivership appointment sought by Presgar and Arista Imaging derivatively through NSR.  *Id.* Following a seven hour evidentiary hearing and based on the substantial record before it, the State Court entered an Order on December 6, 2019, finding that: (i) the efforts to expel NSR from the Arista Imaging membership were not successful and NSR remained a 42% voting member of Arista Imaging for all purposes; (ii) avoidance of irreparable harm to Arista Imaging and Presgar required enjoining Mr. Farrell from having any access to or control over Arista Imaging or Presgar; and (iii) a receiver would be appointed to take control over the assets and operations of Arista Imaging and Presgar. *Id.* at 13-14.

22.     Mr. Farrell made the same assertions regarding NSR's alleged expulsion from Arista Imaging in the State Court that are adopted in proxy by the Debtors before this Court. After seven hours of testimony, extensive documentary evidence and briefing, the State Court found that "[t]he purported expulsion … was ineffective." *Id.* at p. 11.

23.     The State Court's findings regarding the ineffectiveness of the purported expulsion of NSR from the Arista Imaging membership included the following:

- "Section 3.8(f) if the Operating Agreement requires prior approval of a "Super-Majority-In-Interest" (i.e. 75% of the outstanding units of Arista Imaging) before a member may be expelled.  This requirement … exists '[n]otwithstanding any provision herein to the contrary.' … At the time of the purported expulsion in January 2019, NSR owned 42% of the outstanding units of Arista Imaging. As a result, without NSR's approval (which NSR obviously did not provide) Defendant Farrell could not—and did not—obtain the requisite 75% approval." *Id.* at p. 11-12.

- "[T]he purported expulsion did not comply with section 8.5['s] … require[ment] that upon expulsion, [Arista Imaging] purchase the expelled member's units for a purchase price equal to the member's 'positive capital account balance' with [Arista Imaging] as of the last day of the preceding capital quarter," having proffered only $55,720 when tax filings indicated the NSR capital account balance to be $117,134. *Id.* at p. 12.

- In accordance with the terms of the Operating Agreement, Mr. Farrell's "'theft embezzlement or unauthorized taking' of Presgar's funds, which had been occurring since at least 2014" stripped his membership owning entity, Oidhreacht Investments, of the right to vote, which, coupled with the partial disqualification of the other voting member, Sweetpea Ventures, vote of those interests obtained through a divorce proceeding, rendered achieving the requisite 75% super-majority a mathematical impossibility. *Id.* at p. 13 n. 16.

24.     The State Court also ordered that Mr. Farrell "will cease to have any involvement in, or control over, any matter relating to Presgar or Arista Imaging, during the pendency of this litigation while this Order is in place," premising that order on the following findings, among others:

- After "reviewing the record evidence and conducting an evidentiary hearing, … Plaintiff is entitled to an order enjoining Defendant Farrell from continuing to

oversee and/or manage the imaging center (i.e., Presgar) and from having any access to any of the imaging center's assets and funds." *Id.* at p. 3;

- There exists a substantial likelihood that Defendant Farrell has, among other things, breached his fiduciary duties to the Companies and engaged in conversion and civil theft of the Companies' assets and funds. *Id.* at p. 8-10;

- Farrell spent approximately $200,000 on personal entertainment and travel expenses for himself, his wife, and two children, and embezzled "millions of dollars" through entities owned by him. *Id.* at p. 4-8;

- "Farrell misappropriated Presgar's funds using two methods; First, Farrell repeatedly used Presgar's bank accounts for personal expenses … Second, evidence revealed Farrell misappropriated funds from Presgar by causing Presgar to pay for unspecified services allegedly provided to the imaging center by two separate entities solely owned by Farrell." *Id.* at p. 3-4.

- The Defendant Farrell's misconduct will cause irreparable harm to the Companies if he is not enjoined from further access to and control over the imaging center's operations and funds, leaving Plaintiff with no adequate remedy at law. *Id.* at p. 3.

25.     Separately, through an order dated December 6, 2019, the State Court appointed Melissa D. Visconti, Esq. as Receiver, and directed the Receiver to immediately take possession and control of all assets and operations of Presgar and Arista Imaging so that the Receiver may aid in the transition of all operations of Presgar to Ms. Jessica Vidaurre and undertake a full accounting of historical operations, further ordering Mr. Farrell to surrender control and cooperate with that process, among other relief. *See* Order Appointing Receiver, *NSR Imaging, LLC v. Farrell,* Case No. 2019-007383-CA-01 (the "Receivership Order"), ECF No. 17-4. Mr. Farrell appealed the State Court's order and sought a stay of that order. The stay was denied. The appeal remains pending.

**E.     The Commencement of the Chapter 11 Cases**

26.     Just four days after the State Court ordered Mr. Farrell "cease to have any involvement in, or control over, any matter relating to Presgar or Arista Imaging" [finding that Arista Imaging and Presgar would suffer irreparable harm if Mr. Farrell had continued access to Presgar's operation and funds], and after the State Court determined that the attempted expulsion of NSR from the Arista Imaging membership was ineffective so that NSR continued to hold a 42%

10

membership interest in an entity that required a 75% supermajority to commence a bankruptcy case or appoint a receiver to take possession of and control over Debtors' assets, Mr. Farrell, in direct violation of that order, signed a series of documents commencing these chapter 11 cases.

27.     Despite the December 6, 2019 State Court order expressly holding that NSR continued to hold 42% of the membership interest in Arista Imaging, on December 10, 2019 Mr. Farrell signed a Written Consent Of A Supermajority Of The Members Of Arista Imaging Of N. Miami, LLC indicating that a document not bearing the signature of NSR through its authorized agent, constituted evidence of the authority of "a supermajority of the membership interests of Arista Imaging of N. Miami, LLC … acting on behalf of Arista Miami and its wholly owned subsidiary Presgar Imaging of CMI North LC…." *See* Voluntary Petition for Non-Individuals Filing for Bankruptcy, ECF No. 1, at p. 5.

28.     Despite the State Court order that Mr. Farrell "cease to have any involvement in, or control over, any matter relating to Presgar or Arista Imaging," Mr. Farrell signed voluntary petitions under chapter 11 for both Presgar and Arista Imaging as Managing Member of Arista Imaging. *See* Voluntary Petition for Non-Individuals Filing for Bankruptcy, ECF No. 1; *In re Presgar Imaging of CMI North, L.C.,* Case No. 19-26520-AJC, Voluntary Petition for Non-Individuals Filing for Bankruptcy, ECF No. 1.

29.     Later, on January 7, 2020, Mr. Farrell, in the stated capacity of managing member of Arista Imaging and Presgar, signed schedules and a statement of financial affairs for and on behalf of both Arista Imaging and Presgar.  *See* ECF Nos. 72, 73.

30.     The schedules reveal the following:

- Arista Imaging
    - Assets
        - $52,402 in cash
        - Unstated value of its 100% interest in Presgar

- o Liabilities
  - ▪ $0.00
- • Presgar
  - o Assets
    - ▪ $4,252,934.12
      - • Inclusive of $28,219.06 in cash.
  - o Liabilities
    - ▪ $382,714.69

ECF Nos. 72, 73.

31.     The Debtors' schedules, therefore, suggest that the Debtors have more than $3.8 million in net asset value on approximately $4.3 million of consolidated asset value. ECF Nos. 72, 73.

32.     The vast bulk of the $382,714.69 of Presgar liabilities consists of a $330,000 claim by the law firm of Greenberg Traurig scheduled as disputed, contingent and unliquidated.  *See* Official Form 206, ECF No. 73, at p. 11.  In its January 21, 2020 *Motion For Leave To Withdraw As Counsel For Non-Debtor Defendants* filed in Adv. Pro. No. 19-01927-AJC before this Court,[3] Greenberg Traurig suggested that it held no claim against either Debtor, stating, "Greenberg Traurig did not represent either of the Debtor Defendants, Arista Imaging of N. Miami LLC or Presgar Imaging of CMI North, LLC in the State Court Action.  Greenberg Traurig did not file the underlying Chapter 11 cases or the removal of the State Court Action to this Court."  *NSR Imaging, LLC, et al. v. Farrell et al. (In re Arista Imaging of N. Miami, LLC)*, Adv. Pro. No. 19-01927-AJC, Adv. Pro. ECF No. 4, at ¶ 2.

33.     Greenberg Traurig's statement that it is not owed money by either Debtor entity is supported by the testimony of Mr. Farrell before the State Court during the evidentiary hearing

---

[3] On December 13, 2019, Farrell, on behalf of the Debtors as Nominal Defendants, filed a *Notice of Removal*, removing the Litigation before this Court and commencing Adversary Proceeding No. 19-01927-AJC. *See Notice of Removal*, ECF No. 6.

conducted on September 18, 2019 in the Litigation (the "State Court Hearing").  The State Court

Hearing transcript reveals the following testimony:

> BY MR. CUVA [sic]:
>
> Q. What I want to know -- and we're going to test this, and remember you're under oath. What I want to know is have the funds of Presgar been used directly or indirectly to pay for your legal fees?
>
> A. Not to my knowledge, no.
>
> Q. How are you paying for your legal fees?
>
> A. I pay through Epic Management.
>
> Q. And where is Epic Management getting the funds to pay your legal fees?
>
> A. Well, we have a number of clients that we charge management fees to.
>
> Q. Are any of the fees, are any of the monies that Epic is using to pay Greenberg, do any of those monies come from Presgar?
>
> A. No.
>
> Q. Are you 100 percent certain because we're going to test it?
>
> A. Yes. We get management fees, and we have to pay from Epic Management, but it has to be from our management revenue.

*See Statement and Reservation of Rights of NSR Imaging, LLC and Daniele Mugnai Regarding*

*Debtors' Motions Scheduled for Hearing on December 23, 2019*, at Exhibit A, *Excerpted*

*Transcript of September 18, 2019 State Court Hearing*, ECF No. 44-1, at 82.

      34.     That Greenberg Traurig is not owed money by either Debtor is also supported by

Mr. Farrell's own declaration filed with this Court on the December 10, 2019.  In that first day

declaration, Mr. Farrell stated as follows:  "I had no choice but to hire a lawyer to respond and to

defend *myself* and *my companies* against the escalating aggressive tactics by Mr. Mugnai.  To that

end *I* retained the services of Greenberg Traurig, who advised *me* to file suit to stop Mr. Mugnai's

attacks."  *Farrell Declaration*, ECF No. 18, at ¶ 55 (emphasis added). Later in that same

declaration, Mr. Farrell reiterated that the services rendered by Greenberg Traurig were for Mr. Farrell's benefit, not for the benefit of the Debtors, stating, "[o]n November 1, 2018, I filed a complaint in Florida state court initiating the case styled Epic Management Group, LLC et al v. Daniele Mugnai, et al., Case No. 2018-037172-CA-01 (the 'Original Case')." *Id.* at ¶ 56.

35.     Subtracting the claim scheduled as disputed, unliquidated and contingent of Greenberg Traurig from the liabilities of Presgar listed in its schedules reveals that total assets of the consolidated debtor entities are over $4.3 million and total liabilities are approximately $53,000, or less than the over $80,000 in cash on hand of the two Debtors. *See* ECF No. 73.

36.     When pressed for the rationale supporting their chapter 11 petition, the Debtors indicate disagreement with the State Court's finding that "the Defendant Farrell's misconduct will cause irreparable harm to the Companies if he is not enjoined from further access to and control over the imaging center's operations and funds," instead offering the contrary opinion of counsel that the "ruling could put the company out of business."  *See Transcript of January 8, 2020 Hearing in Bankruptcy Court on ECF Nos. 17, 58, 22, 59, 65, 32, 30* (the "Hearing Transcript"), at 38:10-11.

37.      In the Opposition, the Debtors stated the following:

> The Debtors did not have a full and fair opportunity to be heard in the State-Court litigation that resulted in the Receivership Orders being entered improvidently by the State Court. . . . [T]he Debtors did not have a full opportunity to conduct discovery before the first evidentiary hearing conducted on September 18, 2019; numerous motions—some of them threshold motions that should have been heard and ruled upon early in the case—were left unresolved. Procedural improprieties and irregularities abounded, in violation of the Debtor's due process rights.  In the first instance, NSR lacked standing to file the complaint derivatively, having been expelled from the membership in January 2019.  The owners of NSR refused to be deposed in the case.  And the Receivership Orders included findings—drafted by the Movants—that had no basis in the evidence.

*Opposition,* ECF No. 71, at ¶ 95.

38.     That statement, however, evidences conflation of Mr. Farrell's position with the Debtors'.  The Debtors were the plaintiffs in the State Court, derivatively through NSR.  *See Injunction Order*, at p. 1. The Debtors were the beneficiaries of the State Court's determination that, "it appears Farrell has misappropriated millions of dollars from [Arista Imaging and Presgar]" that could be recovered for the stakeholders of the Debtors.  *See Injunction Order*, ECF No. 17-3, at p. 4.  The Debtors appear to have been given the opportunity to recover misappropriated funds, and it would seem it is in their best interest to leave Mr. Farrell to whatever appellate rights he may have while they follow a pathway to recovery.  *See generally*, *Injunction Order*, ECF No. 17-3, at p. 13-14.

39.     NSR in its capacity as member of Arista Imaging and Daniele Mugnai in his capacity as a creditor of Presgar jointly filed the instant Motion to Dismiss, seeking dismissal of the chapter 11 cases of both Debtors pursuant to section 1112(b) of the Bankruptcy Code for cause. *Motion to Dismiss*, ECF No. 17, at p. 1.  The joint movants assert that cause for dismissal includes that the chapter 11 petitions were not authorized in accordance with the terms of the Debtors' governance documents or applicable state law, and that both cases were filed in bad faith. *Id.* at ¶¶ 30-48.

## II.     <u>LEGAL ANALYSIS</u>

Pursuant to section 1112(b) of the Bankruptcy Code, "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall . . . dismiss a case under this chapter, . . . if the movant establishes cause." 11 U.S.C. § 1112(b).  Although section 1112(b)(4) provides certain examples of "cause" sufficient to warrant dismissal of a chapter 11 case, the list is not exhaustive, and courts have recognized that

lack of corporate authority to commence a case is cause for dismissal. *See In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 825 (Bankr. N.D. Tex. 2006).  It is clear that "a party cannot subject an entity to bankruptcy without authority." *In re FKF Madison Park Grp. Owner, LLC*, No. 10-11867 (KG), 2011 WL 350306, at *3 (Bankr. D. Del. Jan. 31, 2011) (citing *Price v. Gurney*, 324 U.S. 100, 105-07 (1945)); *In re S & R Groundview, LLC*, No. 13-03098-8-RDD, 2013 WL 5525729, at *1 (Bankr. E.D.N.C. Oct. 4, 2013) ("A bankruptcy court cannot establish jurisdiction over a petitioning entity where the individual instituting the proceeding lacks authority under state law or the corporate governing documents."). The Court believes the record before it indicates "cause" is present here on the basis that the Debtors' chapter 11 cases were commenced improperly by Farrell, an ousted manager subject to a validly issued state court order that he not have any involvement in or control over any matter relating to either of the Debtors and who acted without requisite corporate authority under the governing Operating Agreement, state law, and the orders of the State Court.

Each Voluntary Petition filed herein was signed by Mr. Farrell, purporting to be the "Managing Member" of Arista Imaging, and through that entity, Presgar. *See* ECF No. 1. Accompanying each Voluntary Petition is a form of "Written Consent of a Supermajority the Members," signed by Farrell again as "Managing Member" and by Elizabeth Stetenfeld, individually as "member" of Arista Imaging.  These filings, however, were in violation of the Operating Agreement, and the execution of each voluntary petition was ineffective because it was done by an individual who had been stripped of authority to act for or on behalf of Arista Imaging or Presgar.

The State Court's Order expressly enjoined Mr. Farrell from "having any involvement in, or control over, any matter relating to Presgar or Arista Imaging." *Injunction Order*, at p. 13. It

also appointed a receiver and accorded that receiver the exclusive authority to maintain possession and control of the Debtors' assets and operations. *See Receivership Order* at 1. As of the Petition Date, Farrell had no authority to act or sign on behalf of Arista Imaging or Presgar (whether as "Managing Member" or otherwise), to prepare the Written Consent authorizing the commencement of the chapter 11 cases for both Debtors, or to sign and file the Voluntary Petitions. The suggestion that this Court not give effect to the injunction imposed by the State Court offends basic notions of comity.

The Debtors take the position, inexplicably, that the Injunction Order is an unconstitutional restraint on the Debtors' right to seek the protections of the Bankruptcy Code. The Court disagrees. The Debtors could have filed chapter 11 petitions without running afoul of the State Court's order if the Receiver authorized and signed the chapter 11 petitions. *See JY Creative Holdings, Inc. v. McHale*, 2015 WL 541692 (M.D. Fla. Feb. 10, 2015) ("Accordingly, it appears that under Florida law, when a receiver is appointed, the receiver steps into the shoes of the board of directors and can act for and on behalf of the entity without first obtaining the board's consent."). The Debtors might even have been able to invoke this Court's jurisdiction if a super-majority vote of the members of Arista Imaging, inclusive of NSR and exclusive of Mr. Farrell's ownership interests, voted to authorize somebody other than Mr. Farrell—presumably the Receiver-- to sign and file the petitions. However, Mr. Farrell is the one individual prohibited by the State Court from "having any involvement in, or control over, any matter relating to Presgar or Arista Imaging" and cannot therefore authorize or execute the petitions commencing these chapter 11 cases, particularly without receiving the consent of NSR, the party holding a membership interest large enough to afford it veto power over such filing.

A bankruptcy case must be dismissed where the petition was signed by a member *who was*

previously removed as a manager and therefore lacked authority to file the case. *See In re H & W Food Mart, LLC*, 461 B.R. 904, 910 (Bankr. N.D. Ga. 2011). The determination of whether a filing is properly authorized is determined by state law. *See In re Nica Holdings, Inc.*, 810 F.3d 781, 789 (11th Cir. 2015) ("In determining whether a bankruptcy filing was authorized, we look to state law."); *In re Fla. Men's Med. Clinic, LLC*, 6:14-BK-08623-KSJ, 2014 WL 3973161, at *1 (Bankr. M.D. Fla. Aug. 7, 2014) (quoting *In re H & W Food Mart, LLC*, 461 B.R. 904, 907 (Bankr. N.D. Ga. 2011)).

Under the law of Arista Imaging's place of formation, Texas, the authority of a limited liability company to file a bankruptcy petition is generally governed by the operating agreement. *See In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 826 (Bankr. N.D. Tex. 2006); TEX. BUS. ORGS. CODE ANN. § 101.052 (providing that company agreement of a limited liability company will govern "(1) the relations among members, managers, and officers of the company, assignees of membership interests in the company, and the company itself; and (2) other internal affairs of the company" and the Texas Business Organizations Code will fill in only where the agreement has not included a particular provision).

The Operating Agreement at issue provides in relevant part:

3.8    **MATTERS REQUIRING SUPER-MAJORITY-IN-INTEREST APPROVAL.**

Notwithstanding any provision herein to the contrary, **neither the Board of Directors nor the Manager will have the authority to do any other following on behalf of the Company** (whether for the account of the Company or of any other legal entity represented by the Company) **without prior approval of a Super-Majority-In-Interest**: . . .

(c)    Make an assignment for the benefit of creditors of the Company, **file a voluntary petition in bankruptcy** or appoint a receiver for the Company; . . . .

*Operating Agreement*, ECF No. 17-2, at § 3.8(c) (emphasis added).

The Operating Agreement defines a "Super-Majority-in-Interest" to mean "Members owning at least seventy five percent (75%) of the Outstanding Units of the Company." *Operating*

18

*Agreement*, ECF No. 17-2, at § 1.9(w).  Under the plain terms of the Operating Agreement, because NSR holds 42% of the outstanding membership interests in Arista Imaging – a fact that was determined by the State Court in the Injunction Order – NSR holds an absolute veto power over <u>any</u> activity described in Section 3.8, including the filing of a bankruptcy case.  *See Injunction Order*, ECF No. 17-3, at 11-12.  In conclusion, the State Court's well-reasoned fourteen-page decision finds "[t]he purported expulsion … was ineffective."  *Injunction Order*, ECF No. 17-3, at p. 11.

"[F]or the purposes of issue preclusion, (as distinguished from merger and bar) 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."  *Christo v. Padgett*, 223 F.3d 1324, 1329 n.47 (11th Cir. 2000).  The State Court's decision on the issue of the ineffectiveness of the purported expulsion of NSR from Arista Imaging was material to the matters before that court and were a central focus of the 7-hour evidentiary hearing.  The State Court's finding that Mr. Farrell's attempted expulsion of NSR was ineffective should not and will not be reviewed by this Court in a quasi-appellate capacity, as the Debtors and Mr. Farrell urge.

In a recent decision issued by the United States Bankruptcy Court for the Northern District of Ohio, the court there also faced with an effort by a debtor to collaterally attack an adverse state court decision that was not a final judgment stated the following:

> This tactic [of filing a chapter 11 case and challenging a prior-entered state court order] appears to violate principles of comity underlying the *Rooker-Feldman* doctrine, a doctrine that prohibits state court losers from filing suit in federal court after state court proceedings have ended, seeking redress of an injury stemming from an adverse state court judgment. *Exxon Mobil Corp. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92, 125 S.Ct. 1517, 1526, 161 L.Ed.2d 454 (2005). Although, arguably, the *Rooker-Feldman* doctrine may not be controlling because there is no final judgment in the Mahoning County proceedings, the court finds that the principles underlying the doctrine weigh in favor of dismissal of this case . . . .

19

*In re California Palms, LLC*, Case No. 19-42174, at p. 17 (Bankr. N.D. Ohio January 14, 2020) (slip op.).  If Mr. Farrell is unhappy with the Injunction Order, his recourse is to pursue his state court appellate rights, not to attempt to use Arista Imaging and Presgar to collaterally attack in this Court a state court decision that may well be a victory for the Debtors.

In their Opposition, the Debtors assert that NSR's expulsion was effected under the terms of "Section 8.3 of the 2018 Operating Agreement."  *Opposition*, ECF No. 71, at ¶¶ 38-41.  They assert that the 2018 document titled operating agreement went into effect in December 2018 based on a vote of a simple majority of the Arista Imaging members.  However, the 2009 Operating Agreement required unanimity for amendments thereto.  Section 12.9 of the Operating Agreement expressly states that "[t]his Agreement may not be amended except by the unanimous written agreement of all the Members." *Operating Agreement*, ECF No, 17-2, at § 12.9.  Without NSR's consent and the consent of the two additional members, the 2018 operating agreement is a nullity.

Because it is apparent from the Written Consent that NSR did <u>not</u> consent to initiation of these chapter 11 cases, the Court concludes the filing of these cases was not properly authorized under Section 3.8 of the Operating Agreement, and jurisdiction does not lie in the Bankruptcy Court.  *See, e.g., In re Adv. Vascular Resources of Johnstown, LLC*, 590 B.R. 323, 324 (Bankr. W.D. Pa. 2018) (filing of voluntary chapter 11 case without super majority required under operating agreement was *ultra vires* act warranting dismissal of case); *In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003) (operating agreement that provided "Major Decisions," including the filing of a bankruptcy petition, required the approval of members holding "in excess of 75% of the Ownership Interests," and "filing of a bankruptcy petition by [the debtor's] manager without member approval [was] not authorized either by [state] law or the Operating Agreement"

but was ultimately ratified by required majorities of members).

When a bankruptcy petition is filed without the requisite authority, dismissal is mandated. *See, e.g., In re Al-Wyn Food Dist., Inc.,* 8 B.R. 42, 43 (Bankr. M.D. Fla. 1980) (dismissing case where debtor's president lacked corporate authority to file under the governing documents and state statute); *In re Bel-Aire Inv., Inc.*, 97 B.R. 88, 90 (Bankr. M.D. Fla. 1989) (dismissing bankruptcy case filed by company president due to lack of authority); *In re Am. Int'l Indus., Inc.*, 10 B.R. 695, 696-97 (Bankr. S.D. Fla. 1981) (dismissing case filed by corporate president without specific resolution of board of directors authorizing such action as required by state statute); *In re Minor Emergency Ctr., Inc.*, 45 B.R. 310, 311-12 (Bankr. S.D. Fla. 1985) (dismissing case filed without the requisite authority provided in the governing documents). Because these chapter 11 cases were filed without the appropriate Super-Majority-In-Interest approval of the filings, by a manager without authority to act for the Debtors, dismissal is warranted.

The Court defers ruling on the issue of whether the Debtors' bankruptcy petitions, filed by an unauthorized representative, were filed in bad faith. Although the joint movants contend these cases were filed in bad faith because Farrell commenced them in an effort to use this Court as a quasi-appellate forum for review and to prevent the Receiver from gaining access to the financial records and assets, the Court believes it need not reach those issues, having found dismissal is appropriate for the unauthorized filing of the petitions. Thus, it is

ORDERED AND ADJUDGED that the *Joint Motion of NSR Imaging LLC and Daniele Mugnai to Dismiss Chapter 11 Case for Lack of Authority to File and for Bad Faith Pursuant to 11 U.S.C. § 1112(b)* [ECF No. 17] is GRANTED, and the chapter 11 petitions of Arista Imaging of North Miami, LLC and Presgar Imaging of CMI North, LLC are DISMISSED.

# # #

21

**Submitted by:**

John J. Monaghan, Esq.
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, Massachusetts 02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850
Email: bos-bankruptcy@hklaw.com
- and -
Jose A. Casal, Esq.
HOLLAND & KNIGHT LLP
701 Brickell Avenue, 33rd Floor
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile:  (305) 789-7799
E-mail: jose.casal@hklaw.com

Attorney Casal is directed to immediately serve a copy of this order to all interested parties listed on the service list and shall thereupon file a certificate of service with the Court.